Stanley Goff, Bar No. 289564
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Attorney for Plaintiff Darrell Buckins

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL BUCKINS,<br><br>       Plaintiff,<br><br>vs.<br><br><br>CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>       Defendant. | Case No: 19-cv-07969 WHA<br><br>**[PROPOSED] AMENDED COMPLAINT FOR DAMAGES**<br><br>**1. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Excessive Force);**<br><br>**2. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Deliberate Indifference);**<br><br>**3. Violation of Americans with Disabilities Act;**<br><br>**4. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Deliberate Indifference);**<br><br>**5. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Deliberate Indifference);**<br><br>**6. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Excessive Force);**<br><br>**7. Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (Deliberate Indifference);**<br><br>**8. Violation of Americans with Disabilities Act;**<br><br>**9. (Violation of Plaintiff's Fourteenth** |

**Amendment Rights 42 U.S.C §1983
(*Deliberate Indifference*)**

**10. Violation of American With Disabilities
Act**

**11. (Violation of Plaintiff's Fourteenth
Amendment Rights 42 U.S.C §1983
(*Excessive Force*)**

**12. (Violation of Plaintiff's Fourteenth
Amendment Rights 42 U.S.C §1983
(*Deliberate Indifference*)**

**13. Violation of American With Disabilities
Act**

**14. Violation of First Amendment Rights 42
U.S.C §1983**

**15. (Battery)**
**16. (Bane Act Violation)**

**17. (Negligence)**

DEMAND FOR A JURY TRIAL

Plaintiff, demanding a jury trial, brings this action against Defendants CITY OF SAN FRANCISCO, all named defendants, inclusive, for general, consequential, compensatory, punitive and statutory damages, costs and attorneys' fees resulting from defendants' unconstitutional and tortious conduct, and as grounds therefore allege as follows:

## I. PARTIES

1.  Plaintiff Darrell Buckins, was at all times relevant to this complaint, living in the City of San Francisco, which is located within the Northern District of California.

2.  Defendant San Francisco County is a legal entity established under the laws of the state of California with all the powers specified and necessarily implied by the Constitution and laws of the State of California, and is a municipality located within the Northern District of California.

3.  Defendant Deputy Ruben Sanchez, is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

4.  Defendant Deputy Chito Villanueva, is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

5.  Defendant Deputy James Sharpe is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

6.  Defendant Deputy James is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

7.   Defendant Deputy Bernard Kaiwi is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

8.   Defendant Deputy Benson Ng is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

9.   Defendant Deputy Espinoza is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

10.   Defendant Deputy DeGuzman is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

11.   Defendant Deputy Paul is a Sheriff's Deputy employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

12.   Defendant Kevin McConnell is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

13.   Defendant **Adrian Larkin** is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

14. Defendant George Antoniotti is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

15. Defendant Gilbert Arriaga is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

16. Defendant Manuel Salamanca is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

17. Defendant Reynold Cristobal is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

18. Defendant Sandro Haro is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

19. Defendant Xavier Murillo is a Sheriff's Captain employed by the City and County of San Francisco at the time of the incident in question. This Defendant is being sued in his individual capacity.

20. Defendant DOES 1-25 were employed by the City and County of San Francisco at the time of the incident, whose identities and capacities are unknown at this time to the Plaintiff. These Doe Officers are being sued in their individual capacities.

21. All defendants acted under the color of law as it pertains to this complaint.

## II. JURISDICTION AND VENUE

22. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and 12132 and the Fourth and Fourteenth Amendments to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has further jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367 as those claims form part of the same case and controversy under Article III of the United States Constitution.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in the City and County of San Francisco California, which is located in this district.

## III. STATEMENT OF FACTS

**November 6, 2018 Incident**

24. On November 6, 2018, inside County Jail #5 located in San Bruno, the Plaintiff who was an inmate at that time and physically disabled with multiple steel rods implanted inside his legs, was inside the gym inside of pod 1A.

25. While sitting inside the pod 1A Gym, Defendant Sanchez ordered the Plaintiff to sit up. The Plaintiff reminded the Defendant of his physical disabilities that Defendant Sanchez was already aware of and told the Defendant that he physically could not sit up.

26. At that moment, Defendant Sanchez radioed "I got a 148" and then he and another deputy approached the Plaintiff, grabbed him by his collar and dragged him 10 feet and issued strikes with their fist as well as knee strikes to the Plaintiff's body.

27. It is alleged and believed that Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, **Adrian Larkin,** George Antoniotti, Gilbert Arriaga. Manuel Salamanca, Reynold Cristobal, Sandro Haro and Xavier Murillo joined in and began to knee the Plaintiff in his neck, back, head and stomach, as well as bend the Plaintiff's wrists and arms.

28. The Plaintiff was then moved backwards while handcuffed with his head pressed down by what is believed to be Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, **Adrian Larkin,** George Antoniotti, Gilbert Arriaga. Manuel Salamanca, Reynold Cristobal, Sandro Haro and Xavier Murillo to pod 1B.

29. It is believed that Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, **Adrian Larkin** placed the Plaintiff in an interview room in pod 1B. The Plaintiff began to scream in pain and the Defendants laughed at him saying "you to like to write grievances?" and then the Plaintiff was asked by one of the Defendant deputies "what hand do you write with?" and one Defendant deputy yelled "break it"

30. One of the these Defendants then took the Plaintiff's pants and all of the Defendants present ordered the Plaintiff who was handcuffed behind his back to lay on his stomach with his legs bent upwards, which caused the Plaintiff extreme pain due to his disability. The Defendants threatened the Plaintiff that his treatment by them would be worse if he laid his legs down.

31. As a result of these threats by these Defendants the Plaintiff endured being in this stress position for over 30 minutes.

32. Defendant James, Bernard Kaiwi, Deputy Espinoza, De Guzman, Deputy Paul, **Adrian Larkin** then came and removed the Plaintiff from the interview room in 1B and escorted him (forcing the Plaintiff to walk backwards with his head pressed down) to the Adseg section inside 2A, despite his known physical disabilities.

33. Defendant James, Bernard Kaiwi, Deputy Espinoza, De Guzman, Deputy Paul, **Adrian Larkin** then dragged the Plaintiff up a flight of stairs, placed him inside a cell and intentionally bent the Plaintiff's arms beyond their natural range of motion and bent his legs (which have metal poles inserted inside) beyond their range of motion causing the Plaintiff extreme pain.

34. Defendant James and the unknown deputy then ordered the Plaintiff under threat of harm to climb under the bunk on the floor and told him if he moved from that position, that he would be beaten up. The Defendant then closed the door and the Plaintiff out of fear, stayed under the bunk on the floor for over 15 minutes.

35. Plaintiff filed a timely government claim on May 6, 2019 against the City and County of San Francisco pursuant to California Government Code §910, et seq. Plaintiff's claims were subsequently rejected by the City and County of San Francisco in June 4, 2019.

**August 31, 2018 Incident**

36. On August 31, 2018, after almost three years of being housed at CJ#4, the Plaintiff was transferred to CJ#5 immediately after he filed grievances regarding the repeated flooding of raw sewage in his cell area, which ultimately led to multiple suits being filed against San Francisco County on behalf of hundreds of inmates.

37. During the transfer process, the Plaintiff and other inmates being transferred were placed in an elevator leading to the basement area in order to board a transport bus. As the Plaintiff began to exit the elevator, his legs (which have metal pins inserted in his knees (3 pins in his right knee) and 2 pins in his left knee) started to cause him immense pain, preventing him from being able to walk.

38. Defendant Villanueva and an unknown Deputy who had knowledge of the Plaintiff's disabilities dragged the Plaintiff in a humiliating manner on the ground for approximately 200 yards and told him to stop complaining.

39. The Plaintiff was subsequently forced to his feet, despite his obvious pain and made to board to transport bus, despite his obvious pain.

40. Once the transport bus arrived at CJ#5, the Plaintiff attempted to exit the bus by using a safety rail that is designed for disabled individuals but the Defendant Captain McConnell, told the deputies not to let the Plaintiff use the rail and to make him step down the stairs without any assistance, despite his disability.

41. Once the Plaintiff was off of the transport bus, the Captain McConnell, got close to his face and said in a threatening posture "You like to complain about raw sewage floods?" "Well we are not having all of your complaining here."

42. Captain McConnell then told the surrounding deputies Defendant Sharp and Villanueva to "get him" and the Plaintiff was forced to walk at a brisk pace, despite his obvious disabilities and obvious pain to a holding cell.

43. Defendant Deputy Sharpe threatened to falsify assault on a peace officer charges on the Plaintiff, but not before they beat the hell out of him if he complained about any jail conditions, while at CJ#5.

44. While in the holding cell after Deputy Sharpe's threats, Defendants Sharp and Villanueva issued strikes to the Plaintiff's body, (Sharpe punched him in the ribs several times), mashed the Plaintiff's face into a wall and told the Plaintiff to get in his knees.

45. The Plaintiff informed the Defendants that to get on his knees would cause him extreme pain due to his disability and that he did not want to put himself in that position. The Defendants ignored the Plaintiff's pleas, and forced the Plaintiff to his knees, causing the Plaintiff extreme pain.

## IV. CAUSES OF ACTION

***November 6, 2018 Incident Related Claims***

### FIRST CLAIM

**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 – As to Defendants Sanchez, Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, Adrian Larkin, George Antoniotti, Gilbert Arriaga. Manuel Salamanca, Reynold Cristobal, Sandro Haro and Xavier Murillo)**

46. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

47. That Defendants, acting under color of law, used unreasonable and excessive force on November 6, 2018, by deliberately and intentionally:

- Grabbed Plaintiff by his collar and dragged him 10 feet struck him in his body and issued knee strikes to his body.

- Punched the Plaintiff in the face multiple times.

- Body slammed the Plaintiff to the ground and punched the Plaintiff multiple times in the face and in the body, while the Plaintiff was lying on the ground.

- Issued multiple knee strikes to the Plaintiff's stomach and rib section.

(i) This treatment of the Plaintiff did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders; and (iv) other alternative methods were available to effectuate a seizure.

### SECOND CLAIM

**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 – As to Defendants Sanchez, Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, Adrian Larkin, George Antoniotti, Gilbert Arriaga. Manuel Salamanca, Reynold Cristobal, Sandro Haro, Xavier Murillo and James)**

48. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

49. That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally forcing the Plaintiff to walk from the gym area backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities.

50. That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally forcing the Plaintiff to walk from the 1-A pod area to 2-A pod backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities.

51. That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally forcing the Plaintiff to walk up a flight of stairs in the 2-A pod area backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities. (i) Defendants knew or should have known of the Plaintiff's documented physical disabilities, (ii) the Defendants' conduct was not reasonably related to legitimate penalogical goal.

52. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

53. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice.

54. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

## THIRD CLAIM
### (Violation of *American With Disabilities Act*)

55. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

56. That the ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(1)(A),(2)(A).

57. That the Plaintiff is an individual with a disability as defined in 42 U.S.C. §12102 and has met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendant.

### *Reasonable Accommodation Theory*

58. That the defendants failed to reasonably accommodate the Plaintiff's disability: (1) By deliberately and intentionally forcing the Plaintiff to walk from the gym area backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities. (2) By deliberately and intentionally forcing the Plaintiff to walk from the 1-A pod area to 2-A pod backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities. (3) By deliberately and intentionally forcing the Plaintiff to walk up a flight of stairs in the 2-A pod area backwards with his head pressed downward while handcuffed causing the Plaintiff to suffer extreme pain due to his disabilities.

59. That this conduct by the Defendants caused the plaintiff to suffer greater physical injuries in the process than other people under identical circumstances who are not disabled.

60. That the defendants were on notice of the Plaintiff's need for an accommodation based on his physical disability.

61. That Defendants had in their possession the ability to provide reasonable accommodations to the Plaintiff by allowing the Plaintiff to walk upright or proving him a wheelchair.

62. That such accommodations would not have fundamentally altered the Defendants' ability to uphold the security of the jail or serve any other penalogical interests.

### FOURTH CLAIM
**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 – As to Defendants Sanchez, De Guzman, Adrian Larken, Kaiwi, Paul, Espinoza)**

63. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

64. That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally forcing the Plaintiff to lie on his stomach in his underwear in the 1-A interview room handcuffed with his legs in the air in a highly stressed position due to his disabilities for over 30 minutes under imminent threat that he would be beaten if he let his legs down. (i) Defendants knew or should have known of the Plaintiff's documented physical disabilities, (ii) the Defendants' conduct was not reasonably related to legitimate penalogical goal.

65. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

66. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice.

67. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

**FIFTH CLAIM**
(**Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 ) – As to Defendants James, De Guzman, Adrian Larken,** Kaiwi, Paul, Espinoza )

68. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

69. That Defendants, acting under color of law, used unreasonable and excessive force on November 6, 2018, by deliberately and intentionally bending the Plaintiff's arms beyond their natural range of motion and bending his legs (which have metal poles inserted inside) beyond their range of motion causing the Plaintiff extreme pain.

70. That Defendants then ordered the Plaintiff under threat of harm to climb under the bunk on the floor and told him if he moved from that position that he would be beaten up. (i) This treatment of the Plaintiff did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders.

***August 31, 2018 Incident Related Claims***

**SIXTH CLAIM**
(**Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (*Excessive Force*) – As to Defendant Villanueva**)

71. That Defendant Villanueva, acting under color of law, used unreasonable and excessive force on August 31, 2018, by deliberately and intentionally: (1) Dragging the Plaintiff in a humiliating manner on the ground for approximately 200 yards and told him to stop

complaining. (2) Forcing the Plaintiff to stand up on his feet, despite his obvious pain and made him board a transport bus, despite his obvious pain and disability. (i) This treatment did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders; and (iv) other alternative methods were available to effectuate a seizure.

72. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

73. As a direct result of the named Defendants actions and inactions, Plaintiff's constitutional rights were violated, resulting in Plaintiff's injuries.

74. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice. In addition, by his conduct, Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of his civil rights, thus constituting oppression.

75. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants and Does 1-25 in an amount according to proof.

### SEVENTH CLAIM
**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (*Deliberate Indifference*) – As to Defendant Villanueva)**

76. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

77. That Defendant having knowledge of the Plaintiff's disabilities, acting under color of law, was deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally dragging the Plaintiff in a humiliating manner on the ground for approximately 200 yards and then subsequently forcing

the Plaintiff to his feet, despite his obvious pain and made to board to transport bus, despite his obvious pain. (i) Defendant knew or should have known of the Plaintiff's documented physical disability, (ii) the Defendant's conduct was not reasonably related to legitimate penalogical goal.

78. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

79. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice.

80. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

## EIGHTH CLAIM
### (Violation of *American With Disabilities Act*)

81. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

82. That the ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(1)(A),(2)(A).

83. That the Plaintiff is an individual with a disability as defined in 42 U.S.C. §12102 and has met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendant.

*Reasonable Accommodation Theory*

84. That the Defendant Villanueva failed to reasonably accommodate the Plaintiff's disability by deliberately and intentionally dragging the Plaintiff in a humiliating manner on the ground for approximately 200 yards, causing the Plaintiff pain. and then subsequently forcing the Plaintiff to his feet, despite his obvious pain and making him board a transport bus, despite his obvious pain.

85. That the Defendants were on notice of the Plaintiff's need for an accommodation based on his physical disability.

86. That the Defendants had in their possession the ability to provide reasonable accommodations to the Plaintiff by allowing him to use a wheelchair to get to the transport bus and having a bus designed with a lift.

87. That this accommodation would not have fundamentally altered the Defendants' ability to uphold the security of the jail or serve any other penalogical interests.

**NINTH CLAIM**
**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (*Deliberate Indifference*) – As to Defendant Villanueva, McConnell and Sharp)**

88. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

89. That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally preventing the Plaintiff from using a rail to exit the transport bus and making him step down the stairs without any assistance, despite his disability. (i) Defendants knew or should have known of the Plaintiff's documented physical disability, (ii) the Defendants' conduct was not reasonably related to legitimate penalogical goal.

90. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

91. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice.

92. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

### TENTH CLAIM
### (Violation of *American With Disabilities Act*)

93. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

94. That the ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(1)(A),(2)(A).

95. That the Plaintiff is an individual with a disability as defined in 42 U.S.C. §12102 and has met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendant.

*Reasonable Accommodation Theory*

96. That the defendants failed to reasonably accommodate the Plaintiff's disability by deliberately and intentionally preventing the Plaintiff from using a rail to exit the transport bus and making him step down the stairs without any assistance, despite his disability causing the plaintiff to suffered greater physical injuries in the process than other people arrested under identical circumstances who are not disabled.

97. That the defendants were on notice of the Plaintiff's need for an accommodation based on his physical disability.

98. That the Defendants had in their possession the ability to provide reasonable accommodations to the Plaintiff by allowing him to use the rail to exit the transport bus, which is what the rail was designed for.

99. That this accommodation would not have fundamentally altered the Defendants' ability to uphold the security of the jail or serve any other penalogical interests.

## ELEVENTH CLAIM
### (Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (*Excessive Force*) – As to Defendants Sharpe and Villanueva)

99. That Defendants Sharpe and Villanueva, who both had knowledge of the Plaintiff's physical disabilities, acting under color of law, used unreasonable and excessive force on August 31, 2018, by deliberately and intentionally:

- Issued strikes to the Plaintiff's body, (Sharpe punched him in the ribs several times),

- Mashed the Plaintiff's face into a wall and told the Plaintiff to get in his knees.

- Ignored the Plaintiff's pleas, and forced the Plaintiff to his knees, causing the Plaintiff extreme pain.

(i) This treatment did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders; and (iv) other alternative methods were available to effectuate a seizure.

100. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

101. As a direct result of the named Defendants actions and inactions, Plaintiff's constitutional rights were violated, resulting in Plaintiff's injuries.

102. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice. In addition, by his conduct, Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of his civil rights, thus constituting oppression.

103. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants and Does 1-25 in an amount according to proof.

**TWELFTH CLAIM**

**(Violation of Plaintiff's Fourteenth Amendment Rights 42 U.S.C §1983 (*Deliberate Indifference*) – As to Defendants Sharpe and Villanueva)**

104. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

That Defendants having knowledge of the Plaintiff's disabilities, acting under color of law, were deliberately indifferent to Plaintiff's physical disabilities, amounting to extrajudicial punishment of the Plaintiff, by deliberately and intentionally ignoring the Plaintiff's pleas, and forcing the Plaintiff to his knees, causing the Plaintiff extreme pain. (i) Defendant knew or should have known of the Plaintiff's documented physical disability, (ii) the Defendant's conduct was not reasonably related to legitimate penalogical goal.

105. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances, there was no objectively reasonable basis for the defendants' actions.

106. The conduct of Defendants as alleged, was intended to cause injury to Plaintiff and was done in conscious disregard of Plaintiff's rights and safety and thus constitutes malice.

107. Because the above acts were performed in a malicious, and/or oppressive manner, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

## THIRTEENTH CLAIM
### (Violation of *American With Disabilities Act*)

108. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

109. That the ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(1)(A),(2)(A).

110. That the Plaintiff is an individual with a disability as defined in 42 U.S.C. §12102 and has met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendant.

### *Reasonable Accommodation Theory*

111. That the defendants failed to reasonably accommodate the Plaintiff's disability by deliberately and intentionally ignoring the Plaintiff's pleas, and forcing the Plaintiff to his knees, causing the Plaintiff extreme pain despite his disability causing the plaintiff to suffer greater physical injuries in the process than other people in identical circumstances who are not disabled.

112. That the defendants were on notice of the Plaintiff's need for an accommodation based on his physical disability.

113. That the Defendants had in their possession the ability to provide reasonable accommodations by not forcing the Plaintiff to kneel on the ground.

114. That this accommodation would not have fundamentally altered the Defendants' ability to uphold the security of the jail or serve any other penalogical interests.

**FOURTEENTH CLAIM**
**(Violation of First Amendment Rights 42 U.S.C §1983 (As to Defendants McConnell, Villanueva and Sharpe)**

115. That Defendants, acting under color of law and at the behest of or in from the encouragement of Defendant McConnell, used unreasonable and excessive force, against the Plaintiff in retaliation for him filing a grievance regarding the raw sewage flooding in the cell areas and bringing this information to the media.

116. That the conduct of the defendants was against the Plaintiff's First Amendment right to speech and to petition the government for redress.

117. That the Defendants' conduct constituted an adverse action against the Plaintiff.

118. That because of the Plaintiff's protected conduct, the defendants' actions chilled the Plaintiff's exercise of his First Amendment rights and;

119. The Defendants' actions did not reasonably advance a legitimate correctional goal.

**FIFTEENTH CLAIM**
**(Battery – As to Defendants Sanchez,** Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, **Adrian Larkin,** George Antoniotti, Gilbert Arriaga. Manuel Salamanca, Reynold Cristobal,  Sandro Haro and Xavier Murillo)

120. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

121. That Defendants, acting under color of law, committed Battery on November 6, 2018, by deliberately and intentionally:

- Grabbed Plaintiff by his collar and dragged him 10 feet struck him in his body and issued knee strikes to his body.

- Punched the Plaintiff in the face multiple times.

- Body slammed the Plaintiff to the ground and punched the Plaintiff multiple times in

the face and in the body, while the Plaintiff was lying on the ground.

• Issued multiple knee strikes to the Plaintiff's stomach and rib section.

(ii) This treatment of the Plaintiff did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders; and (iv) other alternative methods were available to effectuate a seizure.

(**– As to Defendants James, De Guzman, Adrian Larken,** Kaiwi, Paul, Espinoza )

122. That Defendants, acting under color of law, committed Battery on November 6, 2018, by deliberately and intentionally bending the Plaintiff's arms beyond their natural range of motion and bending his legs (which have metal poles inserted inside) beyond their range of motion causing the Plaintiff extreme pain.

123. That Defendants then ordered the Plaintiff under threat of harm to climb under the bunk on the floor and told him if he moved from that position that he would be beaten up. (i) This treatment of the Plaintiff did not serve a penalogical purpose; (ii) Plaintiff was unarmed; (iii) Plaintiff did not pose any threat to defendant or bystanders.

124. Defendants are liable for all injuries caused by their acts, to the same extent as a private person pursuant to California Government Code Section 820(a).

125. Defendants as public employees are not exonerated or immune from liability for Battery for causing the Plaintiff to suffer harm pursuant to California Government Code Section 820.8.

126. Because the Defendants were acting as employees for San Francisco County at the time of their conduct, then San Francisco is vicariously liable for Battery.

## SIXTEENTH CLAIM
## (BANE ACT VIOLATION )

**– As to Defendants Sanchez,** Defendants Bernard Kaiwi, Deputy Espinoza, DeGuzman Deputy Paul, **Adrian Larkin,** George Antoniotti, Gilbert Arriaga, Manuel Salamanca, Reynold Cristobal, Sandro Haro and Xavier Murillo)

127. Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as fully set forth herein.

128. That Defendants through the use of force interfered with the Plaintiff's constitutional rights to not be subjective to excessive force.

129. That upon observing Defendants using excessive force upon his person, the Plaintiff reasonably believed that if he exercised his right to be free from the unlawful use of excessive force upon his person, that Defendants would commit violence against him.

130. That Defendants injured the Plaintiff to prevent him from exercising these rights.

131. That Plaintiff was harmed because he suffered physical injuries, as well as severe emotional stress as a result of the violent acts imposed on him by Defendants and;

132. Defendants' use of excessive force to prevent the Plaintiff from exercising his rights was a substantial factor in causing his harm.

**(– As to Defendants James, De Guzman, Adrian Larken,** Kaiwi, Paul, Espinoza )

133. That Defendants through the use of force interfered with the Plaintiff's constitutional rights to not be subjective to excessive force.

134. That upon observing Defendants using excessive force upon his person, the Plaintiff reasonably believed that if he exercised his right to be free from the unlawful use of excessive force upon his person, that Defendants would commit violence against him.

135. That Defendants injured the Plaintiff to prevent him from exercising these rights.

136. That Plaintiff was harmed because he suffered physical injuries, as well as severe emotional stress as a result of the violent acts imposed on him by Defendants and;

137. Defendants' use of excessive force to prevent the Plaintiff from exercising his rights was a substantial factor in causing his harm.

138. Because the Defendants were acting as employees for San Francisco County at the time of their conduct, then San Francisco is vicariously liable.

### SEVENTEENTH CLAIM

### (Negligence – As to All Defendants)

139. By virtue of the foregoing, Defendants owed Plaintiff a duty of due care not to cause the Plaintiff harm and that this duty was breached by the Defendants' negligence and failure to exercise due care in his handling of the Plaintiff.

140. As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiff was injured as set forth above and is entitled to compensatory damages according to proof at the time of trial.

141. Defendants are liable for all injuries caused by his acts, causing the Plaintiff to suffer harm based on his negligence to the same extent as a private person pursuant to California Government Code Section 820(a).

142. Defendants as public employees are not exonerated or immune from liability for

negligence pursuant to California Government Code Section 820.8.

143. Because the Defendants were acting as employees for San Francisco County at the time of their conduct, then San Francisco is vicariously liable.

## V. PRAYER FOR RELIEF

Plaintiffs pray for judgment against defendants as follows:

1. For compensatory damages and other special damages according to proof;

2. For general damages according to proof;

3. For punitive damages against all individual defendants according to proof;

4. The prejudgment interest at the legal rate according to proof;

5. For costs and reasonable attorneys' fees as provided by law; and

6. For such other relief as the Court may deem fit and proper.

## VI. JURY DEMAND

Plaintiffs demand a jury trial in this action.

LAW OFFICE OF STANLEY GOFF

Dated: June 30, 2020          _/s/ STANLEY GOFF_
                          STANLEY GOFF
                          Attorney for Plaintiff
                          Darrell Buckins